AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>PHILLIP MICHAEL VALERIANI<br><br>Defendant(s) | Case No. **8:24MJ1735TGW** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **March 28, 2024** in the county of **Hillsborough** in the
**Middle** District of **Florida**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 371 and 545 | Conspiracy to smuggle goods into the United States |
| 18 U.S.C. 924(c) | Possession of a firearm in furtherance of a drug trafficking crime |
| 18 U.S.C. § 922(g)(1) | Being a felon in possession of a firearm |
| 18 U.S.C. § 922(o) | Unlawful possession of a machine gun |
| 26 U.S.C. § 5861(d) | Unlawful possession of a silencer |

This criminal complaint is based on these facts:

See Affidavit.

☒ Continued on the attached sheet.

_____
Complainant's signature

SA Joseph Roberts, DHS
Printed name and title

Sworn to before me and signed in my presence.

Date: May 10, 2024

_____
Judge's signature

City and state: Tampa, FL

THOMAS G. WILSON, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Joseph Roberts, being first duly sworn, hereby depose and state as follows:

### I.     INTRODUCTION

1.     I am a Special Agent with the United States Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"). I have been in this position since October of 2003. While working for HSI, I have conducted and participated in investigations of violations of federal law including, but not limited to, the unlawful export of controlled U.S.-origin arms, technology, and commodities. I am empowered by law to investigate and make arrests for violations of federal law, including the unlawful export of controlled U.S.-origin arms, technology, and commodities to destinations outside the U.S. as specified in the Arms Export Control Act ("AECA"), 22 U.S.C. § 2778, the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. Parts 120 et seq., the Export Administration Act, 50 U.S.C. §§ 2401-2420, the Export Administration Regulations, 15 C.F.R. §§ 730-774, and the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706.

2.     I am a graduate of the Criminal Investigator Training Program and Immigration and Customs Enforcement Special Agent Training at the Federal Law Enforcement Training Center in Glynco, Georgia, where I received training in investigations involving the proliferation of sensitive U.S. technology. Additionally, I have received advanced training and gained experience from working with others regarding export violations, money laundering, and the use of email in furtherance of

1

such crimes. I have received advanced training regarding the unlawful import and export of goods and technology to and from the United States. I have participated in multiple investigations involving the importation and exportation of controlled dual-use goods as well as exports to sanctioned or embargoed countries. These items are export-controlled because they pose a risk to United States national security. As a federal agent, I am authorized to investigate violations of laws of the United States, and as a law enforcement officer I am authorized to execute warrants issued under the authority of the United States. In the course of my employment with HSI, I have obtained experience and training in various smuggling and firearm trafficking laws, including, but not limited to, laws and regulations relating to 18 U.S.C. §§ 371, 545, and 922.

3. Prior to becoming a Special Agent with HSI, I was a federal police officer with the United States Secret Service, Uniformed Division from 2001 until 2003.

4. This affidavit is submitted in support of a criminal complaint charging **PHILLIP MICHAEL VALERIANI** (hereinafter, "**VALERIANI**"), also known as Dominick VALDUCCI, Dominick MERINDINO, and Dominick SARDUCCI, with conspiracy to smuggle goods into the United States, in violation of 18 U.S.C. §§ 371 and 545; possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. 924(c); being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); unlawful possession of a machine gun,

in violation of 18 U.S.C. § 922(o); and unlawful possession of a silencer, in violation of 26 U.S.C. § 5861(d).

5. The information contained in this affidavit is based on my personal knowledge and observations made during the course of this investigation, information conveyed to me by other law enforcement officials, personal review of records, documents and other physical evidence obtained during this investigation, interview of witnesses, and information I gained through training and experience.

6. As this affidavit is submitted for the limited purpose of supporting a criminal complaint, I have not included every fact known to me concerning this investigation. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related only in substance and in part and are not intended to be verbatim recitations. When a date is listed, I mean that the event occurred "on or about" that date.

## II. RELEVANT STATUTES

7. It is a federal crime under 18 U.S.C. § 545 to knowingly and willfully, with intent to defraud the United States, smuggle, or clandestinely introduce or attempt to smuggle or clandestinely introduce into the United States any merchandise which should have been invoiced, or make out or pass, or attempt to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper; or to fraudulently or knowingly import or bring into the United States, any merchandise contrary to law, or receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such merchandise after

3

importation, knowing the same to have been imported or brought into the United States contrary to law.

8. 18 U.S.C. § 922(o) prohibits a person from transferring or possessing a machinegun.

9. 18 U.S.C. § 922(g)(1) prohibits anyone who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to possess in or affecting commerce, any firearm or ammunition.

10. 26 U.S.C. § 5861(d) prohibits anyone from receiving or possessing a firearm which is not registered to them in the National Firearms Registration and Transfer Record.

### III. PROBABLE CAUSE

#### A. Glock Switches

11. In 1934, Congress passed the National Firearms Act ("NFA"), which has since been amended, to limit the availability of certain firearms by levying taxes and requiring the registration of such firearms with the federal government. Firearms subject to NFA included machineguns.

12. In the NFA, the term "machinegun" is defined as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). NFA also incorporates into the definition of machinegun "any part designed and intended solely and exclusively or combination of parts designed and intended for use in converting a weapon into a machinegun." Id.

4

13.     Glock Inc. is an Austrian based corporation that manufactures firearms and firearms related products. Glock Inc. maintains a United States headquarters in Smyrna, Georgia responsible for the distribution of Glock Inc. products in the United States.

14.     Part of Glock Inc.'s product line includes various semi-automatic pistols. These pistols have two essential components – the frame and the slide. The frame houses, among other things, the trigger, magazine, and slide release. The stock houses, among other things, the barrel, recoil spring, and firing pin assembly.

15.     Glock Inc.'s pistols available in the United States to retail consumers are designed to function semi-automatically. In essence, the user must depress the trigger each time the user intends to discharge a round of ammunition and cause the firearm to cycle.

16.     A Glock Switch is a mechanism used to circumvent the pistol's intended cycle, thus turning the pistol into a fully automatic weapon.

17.     Pursuant to the NFA, a Glock Switch is a machinegun as it is a part designed and intended solely for use in converting a Glock Inc. pistol into a fully automatic machinegun.

### B.     Seizure of Glock Switch Parts

18.     On March 28, 2024, Customs and Border Protection ("CBP") detained an inbound package with Master Bill of Lading ("BOL") number 297-00005972 (the **"Subject Package"**). The BOL listed the shipper as Individual 1 with address Location 1, Shenzhen, China. The consignee was listed as Dominick VALDUCCI

with the address listed as a West Reynolds Street apartment in Plant City, Florida (hereinafter, the "**Reynolds Address**"). The description on the **Subject Package** was "Toy Car."

19. On April 4, 2024, CBP inspected the **Subject Package** and located two boxes of Metal Models toys. Concealed within the toys were 63 Glock Switch parts – enough parts to make 21 Glock Switches as shown in the photographs below.

 

20. A shipping label was affixed to the **Subject Package** which listed the shipper as Individual 2 with address of Location 2, Rancho Cucamonga, California. An open-source search of this address indicated it is a warehouse. Based on my training and experience, I know criminal organizations will sometimes include a domestic shipping label on an international package in order to hide its origins if it is later encountered by law enforcement.

21. CBP seized the **Subject Package** under 19 U.S.C. § 1595a(c)(1)(C) and 49 U.S.C. § 80302(a)(2).

### C. Law Enforcement Database Checks

22. A search in Florida's Driver and Vehicle Information Database ("DAVID") returned negative results for VALDUCCI.[1] However, DAVID indicated the current resident of the **Reynolds Address** was Individual 3. Agents contacted Tampa Electric Company ("TECO") which confirmed Individual 3 currently has an electric account with TECO for the **Reynolds Address** and has had the same since October 13, 2023.

23. A search of import records identified 55 additional imports wherein VALDUCCI was listed as the consignee. All of these imports also listed the **Reynolds Address** for VALDUCCI, although some appeared to be missing the apartment number. These imports occurred between April 5, 2023, and August 16, 2023, with 24 of them occurring in August 2023 and 17 occurring in July 2023. The last shipment had an arrival date of August 16, 2023. All of these packages were from China except for three, which were each from Singapore. The description of the items varied and included things such as clothing, tools, jewelry, and adult games.

24. TECO identified the prior account holder for the **Reynolds Address** as **VALERIANI**, who had a TECO account at the **Reynolds Address** from March 22, 2023, to October 12, 2023.

25. **VALERIANI** is a convicted felon. **VALERIANI**'s NCIC criminal history query identified several felony convictions to include: Sale of Counterfeit

---

[1] Additional law enforcement database checks also returned negative results indicating VALDUCCI was a fictitious name.

7

Substance; case number CF0608662; Sale of Counterfeit Substance; case number CF0608663; Trafficking in Amphetamine; case number CF0608664; Possession of Methamphetamine; Case number CF0608669; Sale of Counterfeit Substance; Case number CF0608917; all originating from Hillsborough County, Florida with a sentence date of March 26, 2007.

26.  **VALERIANI** was last arrested on August 16, 2023, which was the arrival date for the last package sent to VALDUCCI at the **Reynolds Address** prior to the **Subject Package**.

27.  Alcohol, Tobacco, and Firearms ("ATF") Special Agent Jeffrey Burt conducted a query of the State of Florida Office of Executive Clemency and confirmed it had no record of **VALERIANI's** civil rights, specifically his right to possess a firearm, having been restored, and no record of any pending request for restoration of rights.

28.  DAVID listed **VALERIANI's** current address as a residence on North Franklin Street in Plant City, Florida (hereinafter, the "**Franklin Address**").

29.  Law enforcement database searches for the **Franklin Address** showed multiple imports from various countries to include China. Some of the imports listed the consignee as Dominick MERINDINO or Dominick SARDUCCI. After conducting various database searches, agents concluded these names appeared to also be fictitious. Based on my training, experience, and familiarity with this investigation, I believe MERINDINO, SARDUCCI, and VALDUCCI are all

8

fictitious names **VALERIANI** uses for these international shipments in an effort to evade law enforcement detection.

30. Of pertinent note, a shipment dated March 1, 2023, destined for the **Franklin Address** was from the China-based shipper Company 1. A search of Company 1 identified approximately 15 seizures of firearm switches and/or silencers to individuals in the United States in 2023 and 2024.

### D. Law Enforcement Reporting Regarding VALERIANI

31. On February 11, 2023, Plant City Police Department ("PCPD") responded to the area of North Franklin Street and West English Street, Plant City, Florida in reference to firearms found lying in the roadway. Officers recovered the firearms as well as a large bag containing approximately half a pound of cannabis from the roadway. During the investigation, PCPD officers made contact with **VALERIANI** and his girlfriend, Individual 4,[2] at the **Franklin Address**. Both **VALERIANI** and Individual 4 stated they were the victims of a robbery and had not reported the incident.

32. The investigation revealed that the firearms located outside the residence came from the **Franklin Address**. Neither **VALERIANI** nor Individual 4 provided helpful information to law enforcement with regards to the firearms and narcotics stolen from their home.

---

[2] Individual 4 is incarcerated at Falkenburg Road Jail, being held without bond. She was arrested on March 28, 2024, and charged with possession of controlled substances, possession of drug paraphernalia, possession of burglary tools, and theft offenses.

9

33. On May 11, 2023, PCPD conducted surveillance of the **Franklin Address** on belief the residence was actively being utilized to contain, consume, sell, and distribute illegal narcotics. Officers observed Individual 4 depart the residence and officers conducted a traffic stop. Pursuant to a state warrant, officers searched the car and located narcotics which field tested positive and were later confirmed by laboratory testing to be cocaine.

34. At the same time as the vehicle warrant, PCPD officers conducted a search warrant at the **Franklin Address**. Pursuant to the state search warrant, $110,100 in bulk cash, three AR Style magazines, 10 rounds of .223 ammunition, a 3D printer,[3] and a cardboard box with a shipping label from Aim Surplus, LLC addressed to **VALERIANI** were seized.

### E. Execution of Search Warrant at Reynolds Address

35. On April 16, 2024, HSI, along with other federal and local law enforcement agencies, executed a search warrant for the **Reynolds Address**. Once the location was secured, agents conducted a non-custodial, post-*Miranda* interview of Individual 3.[4]

36. Individual 3 stated the mailman approached her Friday, April 12, 2024, asking her who lived at Apartment 1 since he was delivering mail for Dominick VALDUCCI. Individual 3 stated that her mailbox also had the name

---

[3] 3D printers are commonly used to print and create firearm components to include ghost guns.
[4] The interview was audio recorded.

Dominick VALDUCCI written below it. Individual 3 stated she notified the mailman that she was the only individual living in Apartment 1.

37.     Individual 3 stated on occasion she would see on her surveillance camera the mailman dropping off packages at her residence that would disappear by the time she returned home from work. Individual 3 identified this individual as **VALERIANI**.[5]

38.     Individual 3 stated that **VALERIANI's** sister was her best friend, and that she contacted Individual 3 when **VALERIANI** was arrested to see if she wanted to take over **VALERIANI's** apartment. Per Individual 3, she moved into the apartment on or about September 10, 2023. Although he no longer resided at the **Reynolds Address**, **VALERIANI** had a spare key to the apartment.

39.     Individual 3 later stated that **VALERIANI** picked up packages from the **Reynolds Address** while she resided there on at least three prior occasions. Individual 3 contacted **VALERIANI** when packages arrived. Each of these three packages were addressed to Dominick VALDUCCI. The first package was very small, but the other two packages were large. Individual 3 stated she did not look closely at the first package but saw the two larger packages listed an address originating in California.

---

[5] Individual 3 correctly identified **VALERIANI** from an eight-person photo line-up.

11

F. **Execution of Search Warrant at Franklin Address**

40. On April 16, 2024, HSI, along with other federal and local law enforcement agencies, executed a search warrant at the **Franklin Address**. **VALERIANI**[6] was the only individual located inside the residence and was removed while agents secured and searched the residence.

41. A search of the **Franklin Address** located the following pertinent items:

   a. Approximately 721 grams of cannabis;

   b. Two vials of suspected steroids weighing approximately 47 grams;

   c. Approximately 44 grams of amphetamine pills;

   d. Approximately 22 grams of methamphetamine;

   e. Approximately 40 grams of cocaine;

   f. Various drug paraphernalia;

   g. A Romarm rifle, model GPWASR-10/63;[7]

   h. P80 pistol;[8]

   i. A suppressor;

   j. A 9mm drum magazine;

   k. A 9mm extended magazine;

   l. Approximately 23 rounds of 9mm ammunition;

---

[6] Agents attempted to conduct an interview of **VALERIANI**, but **VALERIANI** invoked his right to counsel.
[7] The rifle had a magazine connected to it loaded with 27 rounds of 7.62 ammunition.
[8] P80 pistol was a "ghost gun" with no serial number. In addition, the pistol had a foldable stock and Glock switch attached to it.

12

 m. An AK magazine with 36 rounds of 7.62 ammunition;

 n. Black tactical vest with ballistic plates;

 o. Two FBI raid jackets;

 p. One DEA raid jacket;

 q. U.S. postal tape; and

 r. Priority mail shipping labels.

  

*Items seized from **Franklin Address** on April 16, 2024, from left to right: P80 pistol with foldable stock and Glock switch, FBI raid jacket, and firearms located under the mattress on the side of the bed nearest **VALERIANI**'s nightstand*

42. Of pertinent note, the Romarm rifle and P80 pistol were concealed between the main bedroom mattress and box spring. Based on the contents of the nightstands, it appeared to be on the side in which **VALERIANI** slept. The nightstand on that side also had a magnetic pistol holder on the side of it. Inside the nightstand, agents located court documents with **VALERIANI's** name.

43. The narcotics, suppressor, and other magazines were located in the master bedroom closet which was connected to the bathroom. Specifically, the

narcotics and suppressor were located in the upper portion of an unlocked safe in the master closet.

44. At the time this warrant was executed, **VALERIANI** was the sole occupant of the **Franklin Address** and it appeared he had been the only resident since at least March 28, 2024.

45. After the warrant was concluded, **VALERIANI** was arrested by PCPD for various charges related to the drugs and firearms located at the **Franklin Address**.

### IV. CONCLUSION

Based upon the foregoing, there is probable cause to believe that **VALERIANI**, at a minimum, has committed violations of 18 U.S.C. §§ 371, 545, 922(g)(1), and 922(o). Accordingly, I request that the Court issue a warrant for **VALERIANI's** arrest for these offenses.

_____
Joseph Roberts, Special Agent
Homeland Security Investigations

Sworn to before me and signed in my presence, this 10th day of May 2024.

_____
THOMAS G. WILSON
United States Magistrate Judge

14